IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAMIÁN ANTOÑIO RODRÍGUEZ
YBABÉN,

        Plaintiff,

   v.

NANCY JEANNE COZINE-GOLDSTEIN,
State Court Administrator, Oregon Judicial
Department; JOANN MARIE HUBBARD,
Director, Human Resource Services Division,
Oregon Judicial Department; BRYANT
JOHN BAEHR, Director, Enterprise
Technology Services Division, Oregon
Judicial Department; and LIZABETH BIRNEY
TORGERSON, HR Manager, Human
Resource Services Division, Oregon Judicial
Department,

        Defendants.

Case No. 3:25-cv-01473-AB

OPINION & ORDER

Damián Antoñio Rodríguez Ybabén
2870 Old Dufur Rd
The Dalles, OR 97058

    Self-Represented Plaintiff

1 – OPINION & ORDER

Jill Schneider
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

Craig M. Johnson
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301

      Attorneys for Defendants

**BAGGIO, District Judge:**

      Plaintiff Damián Antoñio Rodríguez Ybabén brings this case under 42 U.S.C. § 1983 against Defendants Nancy Jeanne Cozine-Goldstein, Joann Marie Hubbard, Bryant John Baehr, and Lizabeth Birney Torgerson in their official capacities. First Am. Compl. ("FAC") ¶¶ 1, 45, ECF No. 38. Plaintiff alleges Defendants violated his procedural due process rights under the Fourteenth Amendment. *See* FAC ¶¶ 47–60. Plaintiff seeks declaratory and injunctive relief. *See* FAC ¶¶ A–H (prayer for relief).

      On December 8, 2025, Plaintiff filed an Amended Motion for Preliminary Injunction. Pl.'s Am. Mot. Prelim. Inj. ("Am. PI"), ECF No. 40. On December 11, 2025, Defendants filed a Motion to Dismiss. Defs.' Mot. Dismiss ("Defs.' MTD"), ECF No. 42. For the following reasons, the Court denies Plaintiff's Amended Motion for Preliminary Injunction and grants in part and denies in part Defendants' Motion to Dismiss.

///

///

///

///

///

2 – OPINION & ORDER

## BACKGROUND[1]

"Plaintiff is a former Information Technology Associate with the Oregon Judicial Department [("OJD")]." FAC ¶ 10. Plaintiff started working for OJD on February 26, 2024. FAC ¶ 20. As part of his employment, Plaintiff was placed "on an initial probationary period for 12 full months . . . ." Baehr Decl. Ex. A, at 1. During those twelve months, Plaintiff could be removed at any time for unsatisfactory performance. *Id.* But if Plaintiff's performance was satisfactory through February 26, 2025, he would "attain regular status . . . ." *Id.*; FAC ¶¶ 2, 20.

On November 22, 2024, Plaintiff received a "Notice of Potential Removal" from Defendant Baehr—Director of the Enterprise Technology Services Division and Plaintiff's appointing authority. Baehr Decl. Ex. B, at 1; FAC ¶ 13. Defendant Baehr indicated that he was "considering removing" Plaintiff from his initial probationary period and placed Plaintiff on "non-disciplinary suspension with pay" pending his decision. *Id.* at 5; FAC ¶ 22. Defendant

---

[1] The Court incorporates by reference the following documents because their contents are alleged in Plaintiff's First Amended Complaint and because neither party disputes their authenticity: (1) Plaintiff's January 25, 2024 offer of employment letter, Baehr Decl. Ex. A, ECF No. 45; (2) Plaintiff's November 22, 2024 Notice of Potential Removal letter, Baehr Decl. Ex. B; (3) Plaintiff's February 28, 2025 revised Notice of Potential Removal letter, Baehr Decl. Ex. C; and (4) Plaintiff's June 2, 2025 employment termination letter, Baehr Decl. Ex. D. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) ("A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994))), *superseded by statute on other grounds as recognized in*, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (per curiam); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[A] defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." (internal quotation marks omitted)). The Court, however, declines to incorporate by reference the version of the Oregon Judicial Department Personnel Rules ("JDPRs") attached as Exhibit F to the Schneider Declaration, Schneider Decl. Ex. F, ECF No. 43, because Plaintiff disputes their authenticity as applied to this case, *see* Pl.'s Opp'n Defs.' MTD ("Pl.'s Resp.") 6, ECF No. 48 (explaining that the JDPRs attached to the Schneider Declaration were not in effect during Plaintiff's employment and termination).

Baehr also scheduled a meeting between Plaintiff and Defendant Hubbard—OJD's Human

Resource Services Director—for December 2, 2024, to discuss the Notice of Potential Removal

letter. Baehr Decl. Ex. B, at 5. Plaintiff's meeting with Defendant Hubbard, however, was

postponed due to Plaintiff's medical condition. Baehr Decl. Ex. C, at 5.

On December 5, 2024, OJD "received a notice of filing from Paid Leave Oregon." *Id.*

And "[o]n December 27, 2024, OJD received Notice of a Paid Leave Claim Decision from Paid

Leave Oregon . . . ." *Id.* The December 27, 2024 notice indicated "an intermittent claim for leave

of 60 days," which Plaintiff "took consecutively, with a leave end-date of February 26, 2025."

*Id.* at 5–6.

On February 27, 2025, one day after the Paid Leave Oregon end date and Plaintiff's

initial probationary period end date, OJD "manually altered" Plaintiff's probationary period end

date to May 21, 2025. FAC ¶ 29. The next day, Defendant Baehr issued to Plaintiff a revised

"Notice of Potential Removal" in which Defendant Baehr again placed Plaintiff "on non-

disciplinary suspension with pay" pending his decision on Plaintiff's continued employment.

Baehr Decl. Ex. C, at 7; *see also* FAC ¶ 34. This revised Notice of Potential Removal contained

"allegations of DUII, driving-privilege issues, coworker trust concerns, and other matters not

included in the original" Notice of Potential Removal. FAC ¶ 34.

On May 19, 2025, OJD "altered" for the second time Plaintiff's probationary period end

date to August 17, 2025. FAC ¶ 29. Plaintiff and Defendant Hubbard then met to discuss

Plaintiff's status, after which Defendant Hubbard sent to Defendant Baehr Plaintiff's verbal and

written responses from the meeting. FAC ¶ 35; Baehr Decl. Ex. D, at 1. Thereafter, on June 2,

2025, OJD terminated Plaintiff, effective June 5, 2025. Baehr Decl. Ex. D, at 1; FAC ¶ 36.

Plaintiff was terminated as a probationary employee and denied "the pretermination protections

owed to regular employees, including written notice of all charges, disclosure of the evidence relied on, an opportunity to respond before an impartial decision maker, and access to the JDPR 10 appeal process." FAC ¶ 36. Plaintiff appealed his termination, which Defendant Hubbard refused to process because of Plaintiff's probationary status. FAC ¶ 38.

Plaintiff's theory of the case is that under the JDPRs he was denied a legitimate claim of entitlement to continued employment and the pretermination procedures owed to regular employees—constitutionally protected property interests. FAC ¶¶ 49, 53. Plaintiff asserts that under the JDPRs, he automatically converted to regular employee status on February 26, 2025, after completing twelve months of continuous service. FAC ¶¶ 2, 48. Plaintiff asserts that OJD could have only extended Plaintiff's probationary period if Plaintiff incurred leave without pay exceeding fifteen consecutive calendar days—which he never did. FAC ¶¶ 2, 27. Plaintiff asserts that "[n]o JDPR provision authorizes extending the probationary period for paid or protected leave." FAC ¶ 25. Therefore, Plaintiff asserts that OJD's manual extensions of his probationary period end date and ultimate termination as a probationary employee were impermissible under the JDPRs. FAC ¶¶ 29, 36.

Plaintiff separately asserts that Defendants deprived him of constitutionally protected liberty interests. FAC ¶ 46. Plaintiff asserts that Defendants maintain and publish stigmatizing allegations, which Plaintiff alleges have been disseminated internally within OJD and externally to other Oregon state agencies. FAC ¶¶ 56, 57. Specifically, Plaintiff asserts that OJD maintains Workday entries that classify Plaintiff as a probationary removal. FAC ¶ 42. These entries are visible to hiring officials in other state agencies. FAC ¶ 42. Plaintiff also asserts that his personnel file, which contains the allegations of Plaintiff's DUII and other allegations included in the Notices of Potential Removal, will be transferred to any Oregon state agency that hires

Plaintiff. FAC ¶ 43. Plaintiff asserts that these stigmatizing allegations, combined with his termination and lack of a name-clearing hearing, violate his liberty interests under the Procedural Due Process Clause. FAC ¶¶ 58–59.

## STANDARDS

### I.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts must liberally construe self-represented pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by*, *Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024). Additionally, a court cannot dismiss a self-represented

complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a self-represented complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## II.    Preliminary Injunction

Federal Rule of Civil Procedure 65 authorizes courts to issue preliminary injunctions. Fed. R. Civ. P. 65(a). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20.

## DISCUSSION

Defendants move to dismiss Plaintiff's First Amended Complaint for failure to state a claim. Defs.' MTD 1.[2] Defendants argue that Plaintiff cannot establish a violation of procedural due process under the Fourteenth Amendment. *Id.* at 12.

---

[2] Defendants also move to dismiss Plaintiff's First Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). Defs.' MTD 1, 4. The Court, however, finds that Defendants do not challenge the Court's subject-matter jurisdiction but instead challenge whether Plaintiff presents a cognizable legal theory or alleges sufficient facts. *See Navarro*, 250 F.3d at 732 ("Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."); *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."). Accordingly, the Court proceeds only under Rule 12(b)(6).

Plaintiff moves for a preliminary injunction. Am. PI 1. Plaintiff seeks an order recognizing Plaintiff's regular employee status as of February 26, 2025, requiring Defendants to reinstate Plaintiff, requiring Defendants to correct Workday entries and personnel records, requiring Defendants to process Plaintiff's appeal, requiring Defendants to provide Plaintiff with a name clearing procedure, and enjoining Defendants from publishing, maintaining, or disseminating inaccurate or stigmatizing information about Plaintiff. *Id.* at 2.

The Court grants in part and denies in part Defendants' Motion to Dismiss. The Court finds that Plaintiff plausibly alleges Defendants deprived him of a property interest in violation of the Procedural Due Process Clause. The Court, however, finds that Plaintiff fails to establish a violation of a liberty interest. The Court further denies Plaintiff's Amended Motion for Preliminary Injunction. The Court finds that Plaintiff fails to establish he is likely to succeed on the merits of his claims or that he is likely to suffer irreparable harm in the absence of preliminary relief.

## I.    Motion to Dismiss

To establish a violation of procedural due process, a plaintiff must plausibly allege "three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Here, Plaintiff alleges that Defendants deprived him of property and liberty interests in violation of the Procedural Due Process Clause of the Fourteenth Amendment. *See* FAC ¶¶ 47–60. Defendants dispute, arguing that Plaintiff does not have a constitutionally protected property or liberty interest and, regardless, Plaintiff received due process. Defs.' MTD 6–11. The Court addresses Defendants' arguments in turn.

A.      Property Interest

The Fourteenth Amendment Procedural Due Process Clause safeguards property interests in many forms. *See The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). This includes "actual ownership of real estate, chattels, or money[,]" *id.* at 572, but also interests in specific benefits, *id.* at 576. For example, a person receiving welfare benefits as a matter of statutory entitlement has a property interest in continued receipt of those benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970). Similarly, a college professor entitled to tenure under state law has a property interest in continued employment. *See Slochower v. Bd. of Higher Educ. of N.Y.C.*, 350 U.S. 551, 559 (1956). Ultimately, whether a person has a property interest in specific benefits is "defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Roth*, 408 U.S. at 577. "Key to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong*, 22 F.4th at 1067.

Here, as a threshold matter, Defendants argue that Plaintiff cannot establish a constitutionally protected property interest under the JDPRs because the JDPRs do not secure property interests in specific benefits. Defs.' MTD 6–7. Plaintiff responds that the JDPRs, as the exclusive governing law for OJD employees, support claims of entitlement to specific benefits. Pl.'s Resp. 2–5. The Court agrees with Plaintiff.

As stated, property interests are "defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Roth*, 408 U.S. at 577. Defendants argue that because the JDPRs "are intended to serve as 'guidelines' of current employment practices, and are updated periodically[,]" they are insufficient to secure constitutionally protected property

interests. Defs.' MTD 8. Defendants analogize the JDPRs to the employment policy bulletin in
*Ewalt v. Coos-Curry Elec. Coop., Inc.*, 202 Or. App. 257, 120 P.3d 1288 (2005), and the code of
ethics in *Lewis v. Conway*, No. 2:24-CV-00815-JR, 2025 WL 1520592 (D. Or. May 1,
2025), *report and recommendation adopted*, No. 3:24-CV-00815-JR, 2025 WL 1520306 (D. Or.
May 28, 2025). But Defendants' comparisons are misplaced.

      First, in *Ewalt*, the Oregon Court of Appeals considered whether a cooperative policy
bulletin, "which described certain work rules to be enforced by supervisors[,]" created an
employment contract—separate from the plaintiff's at-will employment agreement—that
guaranteed the plaintiff could only be terminated for just cause. 202 Or. App. at 259, 261. The
court held it did not, reasoning that nothing in the policy bulletin purported to alter the plaintiff's
existing at-will employment agreement and, by its terms, the bulletin created "guidelines[,]" not
"separately enforceable contractual terms of employment." *Id.* at 262–63. Second, in *Lewis*, the
court did not even consider whether the relevant code of ethics could secure a constitutionally
protected property interest in specific benefits for ODOC employees. 2025 WL 1520592, at *3.
Instead, the court only considered whether the code of ethics was sufficient to maintain a breach
of contract claim against an ODOC employee. *Id.*

      Here, by contrast, the JDPRs—"which span nearly 200 pages"—are "rules and orders
designed to maximize uniformity and consistency in the internal administration of the [Oregon]
courts." *Oregon AFSCME Council 75 v. Oregon Jud. Dep't - Yamhill Cnty.*, 304 Or. App. 794,
801, 469 P.3d 812 (2020). They "apply to all OJD employees[,]" *id.*, and they are statutorily
mandated, *see* Or. Rev. Stat. § ("ORS") 1.008 ("The Chief Justice of the Supreme Court *shall*
establish and maintain, consistent with applicable provisions of law . . . [a] personnel plan for

officers, other than judges, and employees of the courts of this state who are state officers or

employees . . . ." (emphasis added)). As the Oregon Court of Appeals explained, the JDPRs are:

> [A] comprehensive set of personnel policies and procedures [that] address matters
> including classification, compensation, hiring, trial service, performance standards,
> grievances, disciplinary actions and appeals, layoffs, assignment of work, leaves
> (including the types of leaves and accrual rates), holidays, and personnel records.

*Oregon AFSCME Council 75*, 304 Or. App. at 801 (internal quotation marks omitted). The

JDPRs are thus more than guidelines. Rather, they set forth and govern all rights, terms, and

conditions of OJD employment, particularly where Oregon law "exempts all state court officers

and employees from the State Personnel Relations Law (ORS Chapter 240) that applies to state

employees generally." *Id.* at 802 n.9 (citing ORS 8.170).

      With that understanding, the Court finds that Plaintiff may be entitled to a

constitutionally protected property interest in specific benefits under the JDPRs—if plausibly

alleged. Indeed, "property interests subject to procedural due process protection are not limited

by a few rigid, technical forms. Rather, property denotes a broad range of interests that are

secured by existing rules or understandings." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)

(internal quotation marks omitted); *see, e.g., id.* at 602–03 (holding that evidence of a de facto

tenure program, despite no explicit tenure system, was sufficient to justify the plaintiff's

"legitimate claim of entitlement to continued employment absent 'sufficient cause'"); *Alexander

v. City of Menlo Park*, 787 F.2d 1371, 1374 (9th Cir. 1986) (finding that the plaintiff could

establish a constitutionally protected property interest under "City Rules").[3]

---

[3] Defendants also argue that under Oregon law, "property interests for public employees
cannot arise solely from an implied or express contract of employment absent some underlying
statute or regulation." Defs.' MTD 7–8 (citing *Hutton v. Jackson Cnty.*, No. 09-3090-CL, 2010
WL 4906205, at *6 (D. Or. Nov. 23, 2010), *aff'd*, 472 F. App'x 568 (9th Cir. 2012), and *Brady v.
Gebbie*, 859 F.2d 1543, 1549 (9th Cir. 1988)). But in *Hutton* and *Brady*, neither of the plaintiffs
were state court employees. *Hutton*, 2010 WL 4906205, at *7 (Jackson County employee);

***

Having found that the JDPRs can confer constitutionally protected property interests in specific benefits, the Court addresses whether Plaintiff has plausibly alleged a protected property interest under the JDPRs, a deprivation by Defendants, and a lack of process. *See Armstrong*, 22 F.4th at 1066. The Court finds Plaintiff plausibly alleges all three.

            i.      Protected Interest

To obtain a property interest in a specific benefit, a person "must have more than an abstract need or desire for it" and "more than a unilateral expectation of it." *Roth*, 408 U.S. at 577. Instead, a person must "have a legitimate claim of entitlement to it." *Id.*

Here, Plaintiff asserts that under the JDPRs, Plaintiff automatically converted to regular employee status on February 26, 2025, twelve months after Plaintiff began his initial probationary period. FAC ¶¶ 27–28. Plaintiff further asserts that under the JDPRs, Plaintiff's probationary period could not be extended unless Plaintiff exceeded fifteen consecutive calendar days of leave without pay. FAC ¶ 16. Therefore, because Plaintiff never incurred leave without pay exceeding fifteen consecutive calendar days between February 26, 2024, and February 26, 2025, FAC ¶ 24, Plaintiff asserts that Defendants' manual extensions of his probationary period end date were not permitted by the JDPRs, FAC ¶¶ 29–30. Plaintiff asserts that because Defendants extended his probationary period end date, he was terminated on June 2, 2025, as a

---

*Brady*, 859 F.2d at 1545 (State of Oregon employee). Here, Plaintiff is a state court employee not subject to "the State Personnel Relations Law (ORS Chapter 240) that applies to state employees generally." *Oregon AFSCME Council 75*, 304 Or. App. at 802 n.9; *see* ORS 8.170. Moreover, the JDPRs arise from an underlying statute, ORS 1.008, which requires the Chief Justice of the Oregon Supreme Court to "establish and maintain" a personnel plan for employees of the courts governing "appointment, promotion, classification, minimum qualifications, compensation, expenses, leave, transfer, layoff, removal, discipline and other incidents of employment . . . ." ORS 1.008(1).

probationary employee rather than a regular employee, and denied various pretermination

protections, "including written notice of all charges, disclosure of the evidence relied on, an

opportunity to respond before an impartial decision maker, and access to the JDPR 10 appeal

process." FAC ¶ 36.

Accepting Plaintiff's allegations as true and construing them in the light most favorable

to Plaintiff, the Court finds that Plaintiff plausibly alleges he had a legitimate claim of

entitlement to the procedural pretermination protections afforded to regular OJD employees.

Indeed, if Plaintiff did attain regular employee status on February 26, 2025, following twelve

months of continuous service with OJD, Plaintiff surely alleges he has more than "a unilateral

expectation" of the specific benefits owed to regular employees. *Roth*, 408 U.S. at 577.

Defendants argue that because Plaintiff's initial probationary period required "successful

completion," Plaintiff's transition to regular employee status after twelve calendar months was

not automatic. Defs.' MTD 9 (emphasis omitted). Defendants instead argue that Plaintiff's

performance needed to be satisfactory for twelve full months, excluding protected and paid

leave. *Id.* at 7. Defendants' arguments are unavailing at this stage of the proceedings. As Plaintiff

identifies, this dispute "concerns the meaning and application" of the JDPRs. Pl.'s Resp. 4.

Without an applicable version of the JDPRs to interpret, the Court must accept all material facts

alleged in Plaintiff's First Amended Complaint as true and construe them in the light most

favorable to Plaintiff. *See Wilson*, 668 F.3d at 1140. Accordingly, the Court finds that Plaintiff

plausibly alleges a constitutionally protected property interest under the JDPRs.

      ii.    Deprivation

For the reasons discussed above, *see* Discussion, *supra* Section I.A.i, the Court also finds

that Plaintiff plausibly alleges Defendants deprived him of a constitutionally protected property

interest. Here, Plaintiff alleges that by terminating Plaintiff as a probationary employee, Defendants deprived Plaintiff of pretermination protections owed to regular employees. FAC ¶ 49. Indeed, Plaintiff alleges that Defendants have refused to process his appeal of his termination. FAC ¶ 49. The Court finds these allegations are sufficient.

### iii.     Lack of Process

Defendants argue that even if Plaintiff attained regular status on February 26, 2025, Plaintiff received constitutionally sufficient process. Defs.' MTD 10–11. But Defendants' argument misconstrues Plaintiff's claim. Here, Plaintiff does not challenge the constitutionality of the process he received; rather, he asserts he was denied the protection of specific benefits owed to regular employees. FAC ¶ 49. Therefore, because Plaintiff plausibly alleges he has a legitimate claim of entitlement to such specific benefits, he was deprived of those benefits, and the JDPRs significantly constrain the discretion of OJD, whether Plaintiff received constitutionally sufficient process is largely irrelevant to Plaintiff's claim. *See Sterling v. Feek*, 150 F.4th 1235, 1248 (9th Cir. 2025) ("A legitimate claim of entitlement exists when there are conditions under which a benefit must be granted or there are limited conditions under which the benefit can be denied."). The question instead is whether the JDPRs entitle Plaintiff to the specific benefits owed to regular employees, a question that cannot be resolved at this stage of the proceedings. Accordingly, the Court finds that Plaintiff plausibly alleges he did not receive sufficient process.

***

In sum, the Court finds that Plaintiff plausibly alleges Defendants deprived him of a property interest in violation of the Procedural Due Process Clause.

///

14 – OPINION & ORDER

B.    Liberty Interest

"The liberty protected by the due process clause of the . . . fourteenth amendment[] encompasses an individual's freedom to work and earn a living." *Bollow v. Fed. Rsrv. Bank of S.F.*, 650 F.2d 1093, 1100 (9th Cir. 1981). "Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Id.* at 1100. "[L]iberty interests protected by the Fourteenth Amendment[, however,] are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013). The government's statements must stigmatize the plaintiff's "good name, reputation, honor or integrity[,]" *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); "charges that do not reach this level of severity do not infringe constitutional liberty interests[,]" *Bollow*, 650 F.2d at 1101. Moreover, the government's statements must "effectively bar [the plaintiff] from *all* employment in her field." *Blantz*, 727 F.3d at 925. "Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm good name, reputation, honor, or integrity." *Bollow*, 650 F.2d at 1101 (internal quotation marks omitted). Ultimately, to state a claim, a plaintiff must plausibly allege "(1) the public disclosure of a stigmatizing statement by a state actor; (2) the accuracy of which is contested; (3) plus the denial of some more tangible interest[,]" such as the termination of employment. *Chaudhry v. Aragón*, 68 F.4th 1161, 1171 (9th Cir. 2023); *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001).

Here, Plaintiff asserts "Defendants maintain and publish stigmatizing allegations including DUII and impaired driving accusations, claims that Plaintiff lacked a valid driver's license, and statements implying poor performance, dishonesty, and untrustworthiness." FAC

¶ 56; *see also* FAC ¶ 4. Plaintiff asserts "[t]hese allegations have been disseminated internally within OJD and externally through Workday, where they remain visible to hiring officials throughout Oregon state agencies." FAC ¶ 57. Defendants dispute, arguing that Plaintiff is not foreclosed from taking advantage of other employment opportunities and Defendants' statements about Plaintiff are "insufficient to implicate a liberty interest." Defs.' MTD 9–10. The Court finds that as a threshold matter, Defendants' allegedly stigmatizing statements are not publicly disclosed. Accordingly, the Court dismisses without prejudice Plaintiff's claim that he was deprived of a liberty interest in violation of the Procedural Due Process Clause.

"[D]isclosure[] of stigmatizing information internally within or between government agencies is not a 'public' disclosure." *Cleavenger v. Univ. of Oregon*, No. CV 13-1908-DOC, 2015 WL 4663304, at *17 (D. Or. Aug. 6, 2015) (citing *Wenger v. Monroe*, 282 F.3d 1068, 1074 n.5 (9th Cir. 2002), *Millman v. Inglish*, 461 Fed. App'x 627, 628 (9th Cir.2011), and *Reyes v. City of Pico Rivera*, 370 Fed. App'x 844, 844 (9th Cir.2010)). Thus, to the extent Defendants have "disseminated [statements] internally within OJD and externally through Workday, where they remain visible to hiring officials throughout Oregon state agencies[,]" FAC ¶ 57, the Court finds that Plaintiff's claim fails because such statements have not been publicly disclosed, *see McKinney v. Benton Cnty.*, No. 6:19-CV-01444-AA, 2020 WL 5026845, at *6 (D. Or. Aug. 25, 2020) ("Publication occurs when defendants disseminate stigmatizing comments in a way that would reach . . . the community at large." (internal quotation marks omitted)).

That said, the Ninth Circuit has held that stigmatizing statements placed "in an employee's personnel file constitutes publication [if] the governing state law classifies [the] employee's personnel file as a public record." *Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004). Here, under Oregon law, "[e]very person has a right to inspect any public record of a

public body in this state, except as otherwise expressly provided by ORS 192.338, 192.345 and

192.355." ORS 192.314(1). A "'[p]ublic record' includes any writing that contains information

relating to the conduct of the public's business . . . ." ORS 192.311(5)(a). But under ORS

192.345(12), "[a] personnel discipline action, or materials or documents supporting that action"

are exempt from disclosure "unless the public interest requires disclosure . . . ." ORS

192.345(12); *see also McKinney*, 2020 WL 5026845, at *7 ("While personnel files of public

employees fall under Oregon's 'public record' definition, disciplinary actions contained in

personnel files of public employees are conditionally exempt from disclosure."). Thus, to the

extent Defendants' allegedly stigmatizing statements are included in Plaintiff's personnel file—

including Plaintiff's probationary removal status and the allegations contained in the February

28, 2025 revised Notice of Potential Removal, *see* FAC ¶¶ 39, 43—the Court finds that such

statements have not been publicly disclosed because they are "personnel discipline action[s], or

materials or documents supporting th[ose] action[s]" and are exempt from disclosure. ORS

192.345(12).

For these reasons, the Court finds that Plaintiff fails to plausibly allege a deprivation of a

liberty interest in violation of the Procedural Due Process Clause. Accordingly, Plaintiff's claim

is dismissed. Plaintiff may file a second amended complaint attempting to cure the deficiencies

identified herein within fourteen days of this Opinion & Order.

## II.    Preliminary Injunction

Plaintiff moves for a preliminary injunction "ordering Defendants, in their official

capacities, to discontinue ongoing violations of the Fourteenth Amendment . . . ." Am. PI 1.

Specifically, Plaintiff seeks an order recognizing Plaintiff's regular employee status as of

February 26, 2025, requiring Defendants to reinstate Plaintiff, requiring Defendants to correct

Workday entries and personnel records, requiring Defendants to process Plaintiff's appeal, requiring Defendants to provide Plaintiff with a name clearing procedure, and enjoining Defendants from publishing, maintaining, or disseminating inaccurate or stigmatizing information about Plaintiff. *Id.* at 2. Defendants oppose Plaintiff's Motion, arguing Plaintiff cannot demonstrate he is likely to succeed on the merits of his claims or that he is likely to suffer irreparable harm in the absence of preliminary relief. Defs.' Resp. Am. PI ("Defs.' Resp.") 2, ECF No. 47. The Court agrees with Defendants. Accordingly, the Court denies Plaintiff's Amended Motion for Preliminary Injunction.

As a threshold matter, because the Court finds that Plaintiff fails to state a deprivation of a liberty interest in violation of the Procedural Due Process Clause, *see* Discussion, *supra* Section I.B, the Court denies Plaintiff's Amended Motion for Preliminary Injunction as to this claim, *see Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits . . . ."). Accordingly, the Court declines to order Defendants to provide Plaintiff with a meaningful name clearing procedure or enjoin Defendants from publishing, maintaining, or disseminating inaccurate or stigmatizing information about Plaintiff. *See* Am. PI 2.

As to Plaintiff's remaining requests, each pertaining to Plaintiff's deprivation of a property interest in violation of the Due Process clause, *see id.*, the Court declines to order these as well.

First, although the Court finds that Plaintiff plausibly alleges a violation of procedural due process of a constitutionally protected property interest, *see* Discussion, *supra* Section I.A, the Court does not find that Plaintiff establishes he is likely to succeed on this claim. Ultimately, Plaintiff's theory of this claim is that the JDPRs, as written, secure Plaintiff a legitimate claim of

entitlement to procedural pretermination protections afforded to regular employees. Whether Plaintiff prevails on this claim, however, necessarily requires the Court to interpret the relevant JDPR provisions. Without those provisions before the Court, the Court cannot determine whether Plaintiff is likely to succeed on his claim.

Second, as this Court has previously held, "[a] loss of earnings and damage to reputation is generally insufficient to support a finding of irreparable harm and provide a basis for temporary injunctive relief." Op. & Order 2, ECF No. 8; *see also* Order, ECF No. 46. Here, Plaintiff again asserts he faces irreparable harm from his termination through financial hardship and reputational harm. *See* Pl.'s Mem. ISO Am. PI 6, ECF No. 40-1. The Court finds this harm is insufficient to support preliminary relief: "[A]n insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Moreover, the Court finds that this case does not present the "genuinely extraordinary situation" as articulated in *Sampson. Id.* ("[W]e do not wish to be understood as foreclosing relief in the genuinely extraordinary situation. Use of the court's injunctive power, however, when discharge of probationary employees is an issue, should be reserved for that situation rather than employed in the routine case.").

For these reasons, the Court denies Plaintiff's Amended Motion for Preliminary Injunction.[4]

---

[4] To the extent Plaintiff argues the Ninth Circuit's "'serious questions' approach to preliminary injunctions[,]" the Court finds that Plaintiff cannot establish this alternative approach because Plaintiff is not likely to suffer irreparable harm in the absence of preliminary relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) ("'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [42] and DENIES Plaintiff's Amended Motion for Preliminary Injunction [40]. Plaintiff may file a Second Amended Complaint attempting to cure the deficiencies identified herein within fourteen (14) days of this Opinion & Order. Defendants shall file their answer or otherwise responsive pleading fourteen (14) days thereafter. Failure to file a Second Amended Complaint will result in dismissal of this matter without prejudice and without further notice.

IT IS SO ORDERED.

DATED this  4th_  day of March, 2026.

AMY M. BAGGIO
United States District Judge

---

can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.").